# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

JOEL E. W.[1] ,                          )
                                         )
    Plaintiff,                     )
                                         )
    v.                             )         CASE NO. 1:19-CV-354-MGG
                                         )
COMMISSIONER OF SOCIAL                   )
SECURITY,                                )
                                         )
    Defendant.                     )

## OPINION AND ORDER

Plaintiff Joel W. seeks judicial review of the Social Security Commissioner's decision denying Mr. W.'s application for Supplemental Security Income ("SSI") under Title XVI of the Act. This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("SSA").

## I.    OVERVIEW OF THE CASE

Mr. W.'s mother filed an application for SSI on his behalf on September 9, 2016, as Mr. W. was under the age of 18 at the time of application. Mr. W. turned 18 subsequent to the filing of his applications, but prior to the ALJ's decision. Mr. W.'s applications were denied initially on March 1, 2017, and upon reconsideration on July 6,

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

2017. Following a hearing on June 28, 2018, the Administrative Law Judge ("ALJ") issued a decision on September 12, 2018, which affirmed the Social Security Administration's denial of benefits. The ALJ found that prior to the age of 18, Mr. W. suffered from the following severe impairments: scoliosis, asthma, obesity, anxiety disorder/social anxiety disorder, reported autism spectrum disorder, reported bipolar disorder/mood disorder, moderate attention deficit hyperactivity disorder, and social communication disorder. The ALJ also found that prior to the age of 18, none of Mr. W.'s severe impairments, nor any combination of her impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A or B. The ALJ also found that prior to the age of 18, Mr. W. did not have an impairment or combination of impairments that functionally equaled any listings. Therefore, the ALJ found that Mr. W. was not disabled prior to attaining the age of 18.

Next, the ALJ found that Mr. W. has not developed any new impairment or impairments since attaining the age 18, but that he has continued to have a severe impairment or combination of impairments. The ALJ found that since attaining the age of 18, Mr. W. has not had an impairment or combination of impairments that meets or medically equals a listed impairment. The ALJ then found that Mr. W. has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with certain additional limitations. In view of Mr. W.'s RFC, the ALJ concluded, based on the testimony of the vocational expert, that Mr. W. had the ability to meet the requirements for employment as an electrical accessories assembler, small products

2

assembler, and bakery conveyor worker, as those jobs are defined by the Dictionary of Occupational Titles. Based upon these findings, the ALJ denied Mr. W.'s claim for SSI.

## II.    DISABILITY STANDARD

An individual under the age of eighteen (a "child") will only be found disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). In order to establish disability, a child must show that (1) he is not engaged in performing substantial gainful activity; (2) he has a severe medically determinable impairment; and (3) his impairments meet, medically equal, or functionally equal a Listing. 20 C.F.R. § 416.924(a)-(d). In order to evaluate whether a child functionally equals a Listing, the ALJ must evaluate how the child functions in six areas: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting with and relating to other people; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.

20 C.F.R. § 416.926a(b). "To find an impairment functionally equivalent to a listing, an ALJ must … find an 'extreme' limitation in one category or a 'marked' limitation in two categories." *Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (citing

20 C.F.R. § 416.926a(a)).

## III.    STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security

cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007).

IV.   ANALYSIS

Mr. W. argues that the ALJ erred by failing to account for evidence that contradicted the findings in multiple domains.

Mr. W. asserts that the ALJ improperly found that he could concentrate on video games and books for four to six hours without considering that he struggles to focus in other contexts. Mr. W. also asserts that the ALJ should have considered that Mr. W. attends one to two hours of school per day all year instead of solely during the school year. However, the ALJ did not solely rely on Plaintiff's ability to focus in during activities he enjoys in finding Mr. W. had a less than marked limitation in attending and completing tasks. [DE 8 at 31]. Moreover, the ALJ found that Mr. W. did have limitations in attending and completing tasks. The ALJ noted that although Mr. W.'s primary care physician noted he has a normal attention span and ability to concentrate, the consultative examiner found limitations in the ability to attend and complete tasks. [*Id.*]. The ALJ found that notes from Neuropsychiatric Associates list abnormal attention and concentrations, and a May 2018 report indicates that Mr. W. "does not seem to listen when spoken to, often does not follow through on instructions, has a lack of focus, is easily distracted, and often loses things." [*Id.*]. The ALJ discussed the evidence and found that while Mr. W. does have limitations, they are less than marked. Mr. W. may not agree with the ALJ's findings of less than marked limitations, but he has not pointed to any evidence in the medical record that contradicts the ALJ's findings.

Moreover, while Mr. W. asserts that the ALJ should have considered his school schedule, the ALJ expressly acknowledged that Mr. W. testified that he struggled with

concentrating on school [DE 8 at 31]. Mr. W. does not assert or show any evidence that his impairments required limiting him to a few hours of school all year. There is no evidence that the choice to change his school schedule was necessitated by his impairment. Mr. W. has pointed to no medical evidence or case authority that supports his assertion that the ALJ improperly considered his ability to attend and complete tasks.

Mr. W. also argues that the ALJ erred in finding he has less than marked limitation in interacting and relating with others. Mr. W. argues that "nothing suggests he can further, say, solve conflicts or work within social cues/rules, etc. as the domain for his age assumes he has mastered by turning 18." However, it is not for the ALJ to find that a lack of information or evidence indicates the possibility of disability.  It is the claimant's burden to prove disability. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). Mr. W. has pointed to no evidence that supports an assertion that he cannot solve conflicts or work within social cues/rules.

The ALJ acknowledged that Mr. W. testified he did not like to be in groups of three people or more. [DE 8 at 32]. However, the ALJ also noted that Mr. W. reported being more comfortable around people he was familiar with, that he had three or four close friends online, and one close friend living near him. [*Id.*]. Moreover, the ALJ noted that Mr. W. could go out alone to a shop near his home, and that examinations showed he was cooperative and maintained good eye contact. [*Id.*].

Mr. W. also asserts that the ALJ did not consider his impulsivity, social anxiety, PTSD, and low range cognitive ability contribute to his limitations in interacting and

relating with others. Mr. W. cites to multiple treatment notes regarding his impulsivity, social anxiety, and PTSD. However, many of these pages are nothing more than checked boxes indicating that Mr. W. has impulsivity, social anxiety, and PTSD, without any discussion of limitations regarding these impairments. [DE 8 at 374-376]. A medical note cited by Mr. W. does indicate that he has difficulty with social cues, difficulties following rules for conversation, storytelling, former social relationships, and that he has no friends. [DE 8 at 475]. However, the ALJ found that Mr. W.'s own testimony regarding his friendships contradicted the medical note, and that other medical examinations noted him to be cooperative and to demonstrate good eye contact. [DE 8 at 28]. Mr. W. cites to a single medical note regarding his low average cognitive ability. [DE 8 at 362]. However, the same paragraph states that his "social/emotional skills appeared to be age-appropriate." [*Id.*]. Mr. W. has failed to show that his impairments require a finding of marked limitations in interacting and relating with others.

Mr. W. makes similar arguments regarding his ability to care for himself. The ALJ determined that Mr. W. had less than marked limitation in the ability to care for himself. [DE 8 at 33]. The ALJ noted that Mr. W. could cook eggs, use the microwave, help clean, unload the dishwasher, unload the dryer, and take out the trash. [*Id.*]. The ALJ also noted that Mr. W. reported difficulties with time management, but that he had no issues with activities of daily living or self-care. [*Id.*]. Finally, the ALJ noted that although Mr. W.'s mother testified that she has to ask him to bathe, cut his hair, shave, and cut his nails, he could complete these tasks on his own. [*Id.*]. The ALJ relied on

treatment notes which indicated that Mr. W. was clean and had appropriate grooming. [*Id.*]. Mr. W. asserts that the ALJ improperly relied on his ability to bathe himself without considering that he required reminders. Mr. W. also asserts that the ALJ failed to acknowledge his mood and anger issues and his fear of the dark.

The ALJ acknowledged Mr. W.'s statements that he does not bathe regularly, but also noted that Mr. W. admitted that he had no issues with activities with self-care. [DE 8 at 33, 73, 101-03, 480]. The ALJ acknowledged that Mr. W. did have limitations in caring for himself, but he ultimately found that Mr. W. demonstrated some ability to care for himself, and therefore the ALJ found him to have a less than marked limitation. [DE 8 at 33]. Mr. W. has failed to point to any evidence that supports his assertion that he was incapable or had marked limitations in the area of self-care. Mr. W. points only to statements from his mother stating that she had to encourage him with hygiene but fails to show that Mr. W. was incapable of performing self-care. The ALJ considered the evidence and determined that although Mr. W. has limitations in self-care, they are less than marked limitations.

The ALJ also considered Mr. W.'s fear of the dark. There is no evidence in the medical record to indicate that Mr. W.'s fear of the dark justifies a marked limitation in his ability to care for himself. Mr. W. has also not asserted that his fear of the dark interfered with his ability to care for himself. Therefore, the ALJ did not err in finding that Mr. W. had less than marked limitation in the ability to care for himself despite continuing fear of the dark.

Finally, Mr. W. asserts that the ALJ erred in finding he had less than marked limitation in moving about and manipulating objects. The ALJ noted that Mr. W. has scoliosis, asthma, and is obese, which physically affect his ability to move about and manipulate objects. [DE 8 at 32]. However, the ALJ found that despite these limiting conditions, Mr. W.'s motor skills appear to be age appropriate, and that he can lift about 40 pounds before his back starts to hurt. [*Id.*]. The ALJ also relied on Mr. W.'s testimony that he has no trouble walking, sitting, or standing. [*Id.*].

Mr. W. once again fails his burden of proof. He failed to provide any evidence in the medical record indicating his had further limitations in the ability to move and manipulate objects. Mr. W. simply speculates that his weight and scoliosis might affect his physical and mental health. He argues that nothing in the record suggests he can participate in a full range of individual or group activities, yet he fails to point to any evidence in the record that indicates he cannot participate or struggles to participate in a full range of individual or group activities. Mr. W. has not provided any evidence that he has any further limitations.

Mr. W. then states that "[t]he ALJ cites to some doctor reports, but generally not the contrary stuff."[2] [DE 15 at 18]. However, Mr. W. makes no mention of what "the contrary stuff" in the medical record entails. He simply states that the ALJ failed to consider contrary evidence without providing any evidence that contradicts the ALJ's

---

[2] It is unclear what Mr. W.'s counsel means by "contrary stuff." It is unclear whether counsel is referring to other medical opinions, treatment notes, or testimony from Mr. W. or his mother. This vague descriptor is indicative of counsel's vague and underdeveloped arguments, which lack any foundation in facts from the medical record.

findings. Mr. W. boldly states that "[r]emand is due for leaving out pivotal evidence that does not support that ALJ's account" [*Id.*], yet he fails to provide any of the allegedly pivotal evidence that would support his claim. Without any such evidence, his argument lacks merit. Mr. W. has the burden of proof to show he is disabled, and he has provided no evidence that he is more limited than the ALJ has found. The ALJ considered evidence of Mr. W.'s obesity, scoliosis, and asthma, and still found that Mr. W. had less than marked limitations in his ability to move and manipulate objects. The ALJ did not err in his findings.

## V.   CONCLUSION

For the reasons stated above, the ALJ supported his decision finding Mr. W. not disabled with substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** this 9th day of March 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge